KUPELE ET AL. *VS.* J. SUMNER ET AL.

Opinion of the Court by McCULLY, J.

The bill of complaint alleges that on December 27, 1876, the defendant, Nancy Ellis, wife of Charles K. Ellis, deceased, and her said husband executed a lease to the plaintiffs for eight years of certain premises at Waikiki, which had been occupied by the plaintiffs for several preceding years, and cultivated on shares under the defendant William Sumner.

William Sumner had become a leper, and was about going to the retreat at Molokai, and had in fact made a conveyance of this land to his brother John Sumner, who was about leaving the Kingdom to reside at Tahiti. Certain conversation is alleged to have been had between the plaintiffs and the Sumner brothers which induced them to believe that the power to deal with this land had been given to the daughter and niece, Nancy, in consequence of which and of her assuming to have charge of the land, the plaintiffs took the said lease, which is now repudiated by A. J. Cartwright, also defendant, who is the attorney in fact of John Sumner. Other facts will also appear in the opinion.

PER CURIAM.

This matter may be considered under two points: First,

whether an injunction will be allowed against a judgment taken by consent; and next, whether the facts of the case would under the circumstances support an injunction. We will first examine as to the facts.

The date of the alleged interview and conversation when John Sumner is said to have told the defendants that he was going to Tahiti, and his brother to Molokai, and that they must deal for the land with Nancy Ellis, is not precisely fixed; but as John Sumner left the Kingdom February 12, 1876, and the lease was executed December 23, 1876, it must have been more than ten months before making the lease. Some of the testimony of the complainants would make it much longer than one year. Taking the complainants' statement of this conversation to be true, would anything then said justify the lessees in taking a lease from Nancy Ellis? They were at that time and for many years previously had been cultivating this land on shares for William Sumner, under some parol agreement on sufferance from year to year, or crop to crop. Under these circumstances John Sumner's directions to them could not be held to signify more than that they might for the present continue as they had been doing, and settle for the proceeds with Nancy. It would be extreme to say that upon such a conversation the plaintiffs might, a year afterwards, take a lease from Nancy for the term of eight years at a fixed annual rent. But unless John Sumner made this statement between the 3d and 10th of February, he was not the owner of this land, for it was conveyed to him by William on the 3d, and that conveyance was put of record before this lease was taken. We are not made certain that William Sumner was present at the conversation. If he was a leper then in custody of the Board of Health, it is unlikely that he was. There is an endeavor made to bring him forward as present when the lease was made, but no witness saw him. Witnesses say they supposed he was in an inner room of the house, but no witness heard him speak. At that date

he had not for more than ten months owned the property, nor was he the agent for his brother, who had another agent (A. J. Cartwright) since September, 1875, whose appointment was of record.

But John Sumner totally denies that he told the petitioners what they narrate, and his denial very. much weakens our belief in their story. They tell it with a suspicious uniformity as to the phrases used, and with an absence of detail as to circumstances which would have been likely if this had been a real transaction by which the Sumner brothers made a transfer of the management of the land to the daughter and niece, Nancy. We think her statement is the probable one, to this effect—that her father being disabled by sickness, she told the tenants of the land not to trouble him about business, but to deal with her; that is, to continue as they had been doing for several preceding years. And such a statement of Nancy's may well have had the assent of William Sumner and of John, if he were giving friendly assistance to his sick brother.

The case of Kamohai *vs.* Kahele, 3d Haw. Rep., 530, differs materially from this. There the business proposed to be done was to sell the land, and Kamohai, who owned the land as his father's heir, assured the purchaser that his uncle was the owner, and assisted in the survey, in the execution of the deed, and receiving the price paid, and the whole transaction was concurrent with the plaintiff's declarations as to the title. In the case at bar any declarations of John or William Sumner were made a year before the lease. They did not authorize a lease for a term of years, which was a different holding from what the complainants had held it. The whole import of such declarations, if they were made by the owner of the land, would be satisfied by the complainants continuing in occupancy under the old parol agreement, and dividing the crop with Nancy until some properly authorized agent should make other arrangements.

35

To hold that such words, used under these circumstances, would support the authority to make a deed would carry the doctrine of estoppel beyond precedent, and beyond the limits of safety.   We think, therefore, that the complainants' counsel had good ground to consent to judgment in the ejectment case, for the defense of equitable estoppel could not have been sustained.

It will not be necessary to proceed at length upon the point that a confession of judgment is a waiver of equities which might have been pleaded.   The doctrine of equity is stated in Sections 1572-4 of Story's Equity Jurisprudence, to the effect that where the facts existed and were known before the trial at law and were as much a defense at law as in equity, no redress can ordinarily be obtained in equity, unless there has been accident or mistake, or without default in the proper degree of watchfulness and care required of careful men, the defense fails to be presented fully.

In Currier *vs.* Este, 110 Mass., 543, a judgment having been entered on an agreed statement of facts, with reference to a boundary line, and it appearing that both parties had been unaware that the line of fences by which they and their respective grantors had occupied for twenty-six years diverged from the line as described in the writ—by which mistake the plaintiff was deprived of three acres of land not submitted to controversy—and the time for a petition for review having passed before this was known, the defendant was perpetually enjoined from taking advantage of the judgment as to the parcel so included by mistake.   For "there was nothing to indicate fault or negligence on the plaintiff in thus mistaking the boundaries of demanded premises."

Floyd *vs.* Jayne, 6 Johnson Chancery, 482; Pearce *vs.* Olney, 20 Conn., 554; Wingate *vs.* Haywood, 40 N. H., 437, sustain the doctrine that Courts of Equity only exercise the jurisdiction here asked for when a party having a good defense to an action at law has no opportunity to make it, or has been

prevented by the fraud or improper management of the other party from making it, by reason whereof a judgment has been obtained which it is against conscience to enforce.

The complainants were cognizant of all the facts they now offer, and the plea could have been set up for all it is worth in the ejectment suit. An equity which would now procure an injunction should then have created an estoppel.

A. S. Hartwell for plaintiffs.

Messrs. Preston and Brown for defendants.

Honolulu, January 21, 1880.